IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HEIDI A. FLORY,** | : CIVIL ACTION NO. 1:25-CV-1140 |
| Plaintiff | : |
| | : **(Judge Neary)** |
| v. | : |
| | : |
| **THE PENNSYLVANIA STATE UNIVERSITY; RONALD WILSON, DVM; WILLIAM WEISS, PHD; JENELLE IZER, DVM, MS; AMANDA P. JONES; HEIDI PAYNE; and BEHZAD SOLEIMANI, MD,** | : |
| Defendants | : |

**MEMORANDUM**

Institutional defendants often prefer to litigate in a federal forum. Federal courts, however, are courts of limited subject matter jurisdiction. Absent certain, narrowly defined circumstances, they do not hear purely state claims. Defendants The Pennsylvania State University (the "University"); Ronald Wilson, DVM; William Weiss, PhD; Jenelle Izer, DVM, Amanda P. Jones; Heidi Payne; and Behzad Soleimani, MD (the "University Defendants") removed this state law action from the Court of Common Pleas of Dauphin County, invoking the court's federal question jurisdiction. Plaintiff Heidi A. Flory seeks to remand this action to state court. Because Flory brings only state law claims that do not fall within this court's narrowly circumscribed jurisdiction, the court will remand the case to the Court of Common Pleas of Dauphin County.

I. **Factual Background & Procedural History**

Around November 1, 2012, Flory accepted a full-time position with the University to serve as a research technologist for the University's College of Medicine. (Doc. 1-1 ¶ 19). She performed the duties of a veterinary technician. (Doc. 1-1 ¶ 19). Around February 1, 2023, she was promoted to the position of the Director of Resource and Compliance Management for Animal Research Activities for the Applied Biomedical Engineering program at the College of Medicine. (Id. ¶ 20). In this position, Flory was responsible for, as relevant here, duties related to ensuring the welfare of the laboratory animals used in research by the University. (Id. ¶¶ 21-24). The laboratory was a federal funded research facility within the meaning of the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131, *et seq*. (Id. ¶ 35).

Around November 2023, Flory first became aware of improprieties committed by Dr. Izer that she believed ran afoul of the AWA. In that month, she alleges she discovered Dr. Izer was purchasing dairy cows at exceedingly high price points and gifting them in an apparent scheme for personal gain. (Id. ¶¶ 40-41). Around April 2024, she discovered Dr. Izer was gifting laboratory sheep that were supposed to be euthanized, instead reporting they had been sold at auction. (Id. ¶¶ 42, 44-46).

In another incident around December 2023, a resident veterinarian performed a catheterization procedure on a lamb that went wrong, resulting in significant blood loss and the lamb's death. (Id. ¶¶ 48-49). Dr. Izer incorrectly reported that the blood loss was due to a genetic clotting disorder. (Id. ¶ 50). Dr. Izer then ordered a second lamb be euthanized to support her findings about the genetic clotting disorder. (Id. ¶¶ 50-51). In February 2024, Dr. Izer encouraged

Flory to improperly change a medical chart concerning the delayed euthanasia of a lamb. (Id. ¶¶ 63-66).

In December 2023, the University received anonymous reports about Dr. Izer's behavior, and the Institutional Animal Care and Use Committee investigated the reports. (Id. ¶¶ 67-68). Flory was placed charge of reviewing the medical charts as part of this investigation. (Id. ¶ 69). During the course of her review, Flory discovered that Dr. Izer had administered Naloxone during post-operative care and initially included this information in the report sent to Dr. Izer for review. (Id. ¶¶ 70-72). Dr. Izer then deleted the reference to Naloxone and instructed Flory to submit a revised version that omitted its use. (Id. ¶ 73). In the same month, Dr. Izer forged a controlled substances log to make it appear that Flory had made a mistake. (Id. ¶¶ 75-78).

Prior to June 17, 2024, and after, Flory complained on a regular basis to her immediate supervisors and reported Dr. Izer's alleged misconduct. (Id. ¶ 81). Around the same time, Flory filed a complaint with the Office of Laboratory Animal Welfare, reporting that defendant Izer had engaged in conduct raising concerns about animal welfare, wrongdoing, and waste. (Id. ¶ 82).

On February 3, 2025, Dr. Weiss informed Flory she was being "relieved of her authority to perform all duties" as Director and revoked her access credentials to two databases. (Id. ¶¶ 89-91). After February 3, Jones, the Assistant Vice President of the University's Human Resources Department, repeatedly urged Flory to resign. (Id. ¶¶ 92-93). On April 10, 2025, Flory discovered her building access badge had

been deactivated. (Id. ¶ 94). In a meeting with Jones, Payne, and Dr. Soleimani the same day, Flory was informed that her duties as Director were reassigned, and while she would keep the Director title, her responsibilities would change to include janitorial duties. (Id. ¶¶ 99-101).

On May 27, 2025, Flory filed a complaint against defendants alleging seven counts under the Pennsylvania Whistleblower Law ("PWL") pursuant, 43 P.S. § 1421, (id. ¶¶ 110-230), as well as several other Pennsylvania common law claims, (id. ¶¶ 231-343). Flory properly served upon each of the defendants, (Doc. 1 ¶ 3), and on June 23, 2025, defendants filed their notice of removal pursuant to 28 U.S.C. § 1446(d). (Doc. 1 ¶ 5).

Defendants assert that Flory's PWL claims require an interpretation of federal law, the AWA, thus bringing this action within this court's jurisdiction. (Doc. 1 ¶ 10). Flory has moved to remand this case to state court, arguing that a federal issue has not been presented. (Doc. 10). The motion is fully briefed and ripe for disposition. (Docs. 11, 16, 17).

## II. Legal Standard

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal district court when the claims fall within the federal court's original jurisdiction. See 28 U.S.C. § 1441(a). A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court. See id. § 1447(c). Such motions may be filed at any time before final judgment is entered. Id. If the district court indeed lacks subject matter jurisdiction, it must remand to the state court

from which the action was removed. Id. Statutes permitting removal "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 162 (3d Cir. 2014) (quoting Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009)).

### III.  Discussion

Defendants' desire for a federal forum does not entitle them to one. Removal is proper only when a plaintiff's claims could have been originally filed in federal court. 28 U.S.C. § 1441(a). That typically means diversity jurisdiction, 28 U.S.C. § 1332(a), and cases "arising under" federal law. 28 U.S.C. § 1331. Diversity jurisdiction is not alleged here, so to proceed the court must have federal question jurisdiction.

Ordinarily, an action "arises under federal law when federal law creates the cause of action asserted." Gunn v. Minton, 568 U.S. 251, 257 (2013). A "special and small category" of cases exist in which an action based solely on state law may nonetheless give rise to federal question jurisdiction. Gunn v. Minton, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013). Federal courts have federal question jurisdiction over a state law claim only when the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312 (2005).

Defendants argue this court has jurisdiction because this case falls into that "special and small category." Flory brings claims under the PWL, which protects certain whistleblowers who report or are about to report in good faith "wrongdoing" or "waste." 43 P.S. §§ 1421, *et. seq.* Because the "wrongdoing" Flory claims under the PWL involves alleged violations of the AWA, a federal statute, defendants argue this case necessarily raises a federal issue. (Doc. 16, 8). To defendants, a court must determine whether an "actual" violation of the AWA occurred, and that court must be a federal one. (Doc. 16 at p. 7). The mere reliance on a federal statute, however, does not mean that this state law claim arises under federal law.

Determining whether the defendants violated the PWL does not require a court to analyze whether an actual violation of the AWA occurred. The PWL states, "[a]n employee alleging a violation of this act must show . . . the employee or person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 P.S. § 1421. "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation . . . designed to protect the interest of the public or the employer." Id. § 1422.

Lastly, the PWL defines "[g]ood faith report" as:

A report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true. An employer is not barred from taking disciplinary action against the

6

employee who completed the report if the employee's report was submitted in bad faith.

Id.

Thus, the statute protects reports made "in good faith," meaning it protects sincere but mistaken reports of "wrongdoing" or "waste" regardless of whether a violation of law, state or federal, is ultimately proven. The court does not need to interpret, apply, or construe the AWA to resolve Flory's PWL claim. The issue before the court is whether Flory engaged in protected activity under the PWL and whether her discharge was retaliatory. Although this inquiry may require a court to consider the AWA to assess the reasonableness of Flory's belief, the PWL does not require a finding that an actual violation occurred, only that the employee, in good faith, reported conduct she reasonably believed constituted wrongdoing.

Even assuming this case requires interpretation of the AWA, the federal issue is not substantial. Flory seeks protection under the PWL for reporting alleged wrongdoing, not to vindicate an alleged right under the AWA. In Gunn, the Supreme Court stated it "is not enough that the federal issue be significant to the parties in the immediate suit." Gunn, 568 U.S. at 260. Rather, "[t]he substantiality inquiry under Grable looks . . . to the importance of the issue to the federal system as a whole." Id. Thus, the bar for what constitutes a substantial federal issue is high. Otherwise, the "special and small category" of cases will become the rule rather than the exception to it.

The court must look no further than Grable itself, where the federal government seized the plaintiff's property to satisfy delinquent taxes. Grable,

7

545 U.S. at 310. When the plaintiff later brought a state law quiet title action against the property's new owner, arguing that the government's seizure was invalid because the IRS's notice requirements violated federal law, the Supreme Court held that this state law action *did* arise under federal law. Id. The federal government had a "'strong interest' in being able to recover delinquent taxes through seizure and sale of property." Gunn, 568 U.S. at 260 (quoting Grable, 545 U.S. at 309). The federal government's "'direct interest in the availability of a federal forum to vindicate its own administrative action' made the question 'an important issue of federal law that sensibly belonged in federal court.'" Id. at 260-61 (quoting Grable, 545 U.S. at 315).

      Thus, while the issue of whether Dr. Izer allegedly violated the AWA may be important to the parties in this action, it is not a substantial federal issue sufficient to invoke this court's subject matter jurisdiction.

**IV.     Conclusion**

Because Flory's claims do not fall within the "special and small category" of cases where state law claims arise under federal law, this court lacks subject matter jurisdiction over the action. The court will grant Flory's motion (Doc. 10) and remand this action to the Court of Common Pleas of Dauphin County. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    November 17, 2025